SHERIFF'S SALES.

———

NICHOLAS HOWARD and EDWARD MOLYNEUX, Complainants, *vs.* SEABORN JONES, THE INSURANCE BANK OF COLUMBUS, JAMES S. CALHOUN, CHARLES L. BASS, and JOHN C. MANGHAM, Sheriff, &c.

*Bill for Relief and Injunction. Demurrer.*

1. Property, once sold under execution against J. S. is liable to be levied on again, if the defendant again becomes its owner.

2. Property, under levy and claim, is subject to a second levy, under other executions against the defendant.

3. If money is raised to pay off a fi. fa. *but not applied* to it; a subsequent sale, under the same fi. fa. will convey good title to a bona fide purchaser. *Semb.*

4. A sale of mortgaged property, after foreclosure, under a common law judgment in favor of other creditors, disposes only of the equity of redemption.

5. Hence, the mortgagee cannot claim the proceeds of such sale, though his mortgage be elder than the judgment.

The bill in the above case charged, that on the first Tuesday in July, 1842, John C. Mangham, as Sheriff, by virtue of two writs of Fieri Facias, one in favor of William Foster, *vs.* Charles L. Bass, maker, James S. Calhoun, T. & M. Evans, John J. Boswell, Wm. P. McKeen, and Seaborn Jones, endorsers, the same being transferred to Seaborn Jones by the plaintiff, which judgment was obtained at October term, 1839, of Muscogee Superior Court, for the sum of $5,774.93 principal, $176.50 interest, and $16.87½ cost; and the other in favor of the Insurance Bank of Columbus *vs.* James S. Callhoun and Charles L. Bass principals, and T. & M. Evans, securities on the stay of the execution which was issued on a judgment obtained at October term, 1838, of the said Superior Court, for the sum of $9,000, principal, $894 interest, up to 10th Decem-

[Howard & al. *vs.* Jones & al.]

ber, 1838, $3, protest fee, and $11.25 cost; sold a portion of lot of land, number 175, on the corner of Broad and Randolph streets, on which was a two story brick building erected, occupied by L. J. Davis and George A. Walker, for the sum of $3,050; the brick store on the north side of Randolph street, occupied by O'Hanlon, $510; a brick granite on the south side of Randolph street, at that time occupied by S. Armstrong Bailey, for the sum of $505. Also, lots 35, 36, 37, and 38, occupied as a residence, by H. Greenwood, for the sum of $2,500. Also, the Oglethorpe House, with the tenements and law offices in the rear, on Randolph street, for the sum of $5,000, all sold as the property of the said James S. Calhoun. That Nicholas Howard, one of the complainants, was the purchaser of said lots. That Edward Molyneux, jr. advanced to Howard the purchase money, to-wit, the sum of $11,565, and that Howard received a deed from the Sheriff, for the said lots and improvements; that at the time of the purchase, the complainants believed that the property was subject to the fi. fa's; that the levies were legal, the sales were valid, and the titles to the property sustainable by law; that since the sale, complainants have ascertained that the said property was not subject to the executions or either of them; that the levies were illegal; that the Sheriff had no power or authority to sell said property; that the sales were void, and therefore, they had acquired no title by the purchase; *on the ground*, that the whole of said property was, on the 1st Tuesday in September, 1839, sold at Sheriff's sale, by virtue of one of said fi. fa's, viz. the one in favor of the Insurance Bank of Columbus, as the property of said Calhoun & Bass, except lots, number 25, 36, 37, and 38; and that by that sale, on the property sold, except the lots excepted, the lien of that last mentioned fi. fa, so far as the interest of Calhoun & Bass extended, was discharged, and the property released from the same, and was not liable to be again seized by said fi. fa; and also that the whole of said property was also levied on as the property of James S. Calhoun, November, 1841, and advertised by the then Sheriff, for January sales, 1842, to satisfy fi. fa's in favor of James S. Shorter *vs.* Calhoun, and Burton Hepburn *vs.* Calhoun, and the aforesaid fi. fa. of the Insurance Bank of Columbus, and that a claim to said property had been interposed by one Arthur B. Davis, and the sales suspended, and that the Sheriff did not return the claim to the Court, as in duty bound he should have done, nor deliver them to his

successor in office; and that the claim is still undisposed of, and therefore that said lots were in the custody of the Law, and not subject to seizure and sale, until the said claims were disposed of; and therefore, that sale was void; also, that the fi. fa. of the Insurance Bank, together with sundry other fi. fa's. sold on the 1st Tuesday in May, 1840, and at other times, before the sale in July, 1842, as the property of said James S. Calhoun, the proceeds of which amount to, in the aggregate, the sum of $14,092.92 cents, which was more than sufficient to have paid off and discharged the said Insurance Bank fi. fa. if the same had been so applied, and therefore, that the same was equivalent to a payment of said fi. fa. and consequently, the fi. fa. was illegal and void; and that the fi. fa. in favor of William Foster, transferred to Seaborn Jones, had no lien on the property of Calhoun, as Calhoun was an endorser; that the debt upon which the judgment was founded, was not payable at bank; that Jones was an endorser also, and that the transfer, by Foster to Jones, conferred no lien in favor of Jones against Calhoun, or continued Foster's lien on the property of Calhoun. The bill also charges the money raised by said sale in July, 1842, still in the hands of the Sheriff. The bill prays, that the sale in July, 1842, may be set aside, and the deeds cancelled; that the proceeds of the sale, viz. that the sum of $11,565, may be decreed to be returned to Molyneux, and such other relief in the premises, as may be equitable and just.

To this bill the defendants filed a general demurrer, on the grounds of a want of equity.

The complainants, by their bill, seek to set aside the sale made by Mangham, Sheriff, on three grounds:

1st. That the property had been previously sold as the property of Calhoun & Bass, by virtue of the fi. fa. of the Insurance Bank of Columbus; that by the previous sale, the property was discharged from the lien of the fi. fa. and was not again subject to the same; that the fi. fa. of William Foster was discharged by the transfer to Jones, the last endorser, so far as the same could operate against Calhoun.

2nd. That the property had been levied on in November, 1841,

[Howard & al. vs. Jones & al.]

by S. R. Bonner, the then Sheriff, for January sales, 1842, by sundry fi. fa's. vs. James S. Calhoun, et al. in favor of James H. Shorter, et al. and claimed by Arthur B. Davis; that the claim was undisposed of, and that the property could not be again seized, being in the custody of the Law.   And

3rd. That said fi. fa. of the Insurance Bank was discharged and paid off, to-wit, that a former Sheriff had raised money, which if applied thereto, would have satisfied the same.

As to the first ground, take the allegations contained in complainant's bill to be true, as we must, for the purpose of considering this demurrer, and the bill no where charges, that at the time of the sale, in July, 1842, there was no legal title then subsisting in James S. Calhoun, one of the defendants ; and so long as there is title in Calhoun, that title is the subject of levy and sale, and to any and every fi. fa. against him, as much as if it had never been before seized and sold.   It all may be true that the same was so sold, and as suggested by defendant's counsel, may have been purchased by Calhoun, or his friend or trustee for him, or he may have, subsequent to the sale, acquired title.   If the complainants wished to avail themselves of the ground, that there was no title in Calhoun or the defendants in fi. fa. they should have so charged ; for the charge, as to a previous sale, does not in any wise charge a want of title in Calhoun, et al. but the bill (I will not say cautiously.) avoids charging the same, or where the title is ; and I again repeat, that it no where charges, that there was no title in Calhoun, et al. at the time of the sale in July, 1842, and in whom, the legal title then was.   It is not a fixed and settled rule of Law, that where a fi. fa. has once seized and sold property, that the same property cannot be again seized by the same fi. fa. provided there is title in the defendant at the time of seizure. The rule, I understand to be this, that a Sheriff could not justify for trespass, in seizing that which had been previously sold by the same fi. fa. provided the purchaser remained in possession, unless he could show title then in the defendants; and that is as far as the rule has ever gone.   I am therefore, of the opinion, that the same property may be sold at any time that there is title in the defendant, notwithstanding the same has been previously sold as the same defendant's property, and to satisfy the same fi. fa.   The question is not, has the

same been formerly *sold*; but *is*, was there title in the defendant, or not, at the time of sale. The bill no where charges there was *not title*, and the Court will not presume there was not, in the absence of such a charge.

As to the next ground, that the property was in *custodia legis*, having been previously levied on and claims interposed, and therefore until the claims were disposed of and levies discharged, was not subject to seizure at the instance of other judgment creditors; I have never understood the doctrine of *custodia legis* to apply to real estate, as the property remains in the possession of the tenant until sold, and is in his keeping, until, by virtue of sale, the possession is then delivered to the purchaser. But the rule is different, in relation to personal property. There the Sheriff, by levy, becomes possessed, acquires a right to hold and keep possession until sold, and then to deliver the possession to the purchaser, and could maintain an action, during the time of possession, for any violation of his right of possession. Such a thing as an action for trespass on freehold, by the Sheriff, whilst the same was under levy, was never heard of; whilst actions have been frequent, and are common, for violation of the qualified right. And what has been the practice? Is it not the every day practice that the Sheriff levies, at different periods, on the same property, either personal or real, at the instance, and to satisfy the claim of different judgment creditors? Is it not the same in relation to attachments? and what lawyer ever attempted to relieve the *property* from subsequent levies, by the interposition of the doctrine of *custodia legis?* But the doctrine will apply in cases where judgment creditors are in different jurisdictions; as instanced in the case cited in 10 *Peters S. C. Rep.* 400, in the case of Hangan *vs.* Lucas. There, the question was not between judgment creditors of the same Court, but of different jurisdictions—one a creditor in the District Court of the United States, and the other in the State Court of Alabama. And in that case the subject matter of levy was personal property; negroes, not real estate, as in the case now under consideration. The question was as to jurisdiction there. The custody of the property is in the officer making the first levy, and consequently the possession had to be disposed of by law. Therefore the law gave it where it belonged. But here the custody of the property is in the defendant. He remains in possession, and is entitled to hold until

[Howard & al. *vs.* Jones & al.]

the title is disposed of, and he by that disposition is dispossessed. I would have no hesitancy in deciding, as to the custody of the property belonging to the officer first seizing, provided the seizure gave him the keeping; but has it ever been disputed that the same officer, officiating in the same jurisdiction, could levy as many executions as the property was subject to, and hold the same until each levy was disposed of, or the property sold, even personal property? Such is the every day practice, and our Statute fully authorises the same. Therefore the levy by Bonner was the levy of the Sheriff of Muscogee; the levy and sale by Mangham, was the act of the Sheriff of Muscogee, all acting in the same jurisdiction. And the former levy of Bonner, and the claim of Davis, in the opinion of the Court, interposed no legal barrier to the subsequent levy and sale by Mangham, Bonner's successor, and that complainant's title is in no wise vitiated thereby.

The remaining ground to be disposed of, so far as complainant's title is affected, was the fi. fa. of the Insurance Bank of Columbus, at the time of levy and sale, discharged and paid off, and the fi. fa. in favor of Wm. Foster, by the transfer to Seaborn Jones, a subsequent endorser to Calhoun, deprived of its lien on Calhoun's property? The complainants, by their bill, charged, that there was and had been raised, by levy and sale of Calhoun's property, the sum of $14,092. 92, and that this sum was more than sufficient to have discharged and paid off this fi. fa. But the bill also discloses the fact, that there were other judgments against the defendant, Calhoun, and it omits to charge that the Sheriff had raised monies sufficient, if applied, to fully pay off this fi. fa. with others of like dignity. If that fact existed, the complainants should have so charged it. But their bill discloses the existence of other claims, and does not charge the payment of this fi. fa. It may be true, that if this sum had been applied to this fi. fa. it would have discharged it, but the bill omits to charge it. The Insurance Bank was entitled to claim and have it, and the subsequent sale raises a fair presumption, that the same was otherwise applied; therefore, I am left to determine that this fi. fa. could not have been fully *paid* off and discharged, from the sum of money charged to have been raised, which relieves me from determining whether, if that had been true, money enough had been raised by the sale of a defendants property to discharge a fi. fa. but which had not been applied, and that where an innocent purchaser had pur-

[Howard & al. *vs.* Jones & al.]

chased property sold to satisfy the same, that his title would be affected thereby. I am inclined to the opinion that the sale would be valid, the title good, and it was so ruled in the case of Voorhees *vs.* The Bank of the United States—See 10 *Peters*, 465; also, in the case of Jackson, Ex. Dem. Saunders, *vs.* Caldwell, 1 *Cowen*, 622; also, 6 *Porter*, 240, and so is the current of authorities; and the defendant would have his remedy against the officer, as well to recover the excess, as for damages. Having thus settled the question, as to the validity of the fi. fa. of the Insurance Bank of Columbus, it is unnecessary to examine the grounds taken in relation to the other, in favor of William Foster.

That a Court of Chancery has jurisdiction, and would and should exercise it, whenever a case is presented for consideration, shewing that a *mistake* had occurred, in the levy and sale of property, as in the case of Wright *vs.* Hooker, 4 *Cowen*, 415: here the land was *misdescribed* in the advertisement of the Sheriff, by *mistake*; therefore, on that ground, the sale was set aside. And in the case of Bexley *vs.* Mead, 18 *Wendell*, 611, the sale was set aside where property worth $1000 was struck off for a trifling sum, on the ground of *accident*, in this, that the plaintiff in the execution had been disappointed in the attendance of an agent, and that the defendant was insolvent. And in the case of McPherson *vs.* Foster, 4 *Wash. C. C. R.* 45, here the sale was set aside, on the ground of mistake, the Marshall having given an erroneous description of the premises sold. And in the case of Mobile Cotton Press and Building Company *vs.* Moore and Magee, 9 *Porter*, where the plaintiff had agreed with defendant to *postpone* the sale, and so notified the Sheriff; the Sheriff, contrary to their agreement, sold the property, worth $100,000, for a trifling sum. But the facts were not brought home to the purchaser. In this case, there was an improper execution of a fi. fa. where the plaintiffs and defendants both were prejudiced by the unauthorized act of the Sheriff; that the sale was *fraudulent*, although the purchaser may have acted in good faith, but the Sheriff's conduct, the seller, was certainly fraudulent and highly reprehensible. This case reviews the authorities generally on the several grounds, when Courts have set aside Sheriff's sales, and refunded to purchasers the purchase money. But they have all went on the grounds of *fraud, accident* and *mistake*. But does this bill disclose any fact, where this sale is vitiated, either

[Howard & al. *vs.* Jones & al.]

by fraud, accident or mistake, or any irregularity ? Here is a valid fi. fa. seizing property of defendants, and disposing of the same in pursuance of Law; the Law has therefore disposed of the same to the purchaser. The complainants have not been prejudiced thereby. They, have in the opinion of the Court, acquired a valid title, or one that cannot be impeached from any fact disclosed by their bill.

I am therefore of opinion that the complainants, by their bill, are not entitled to be further entertained. Therefore, let the bill be dismissed and the injunction be fully dissolved.

Having disposed of the bill, the next question, that has been presented in connection with the demurrer, is the application of the purchase money, now in the hands of the Sheriff. This is claimed by Edward Molyneux, by virtue of a mortgage fi. fa. against J. S. Calhoun, the defendant, issuing from a judgment on the foreclosure of a mortgage, made by J. S. Calhoun to Molyneux, whereby the property sold was conveyed, and which is of older date than the judgments at Law, upon which the money was raised. That the mortgage had been regularly foreclosed, and execution issued, before the levy and sale of the mortgaged premises; that the mortgage fi. fa. was placed in the hands of the Sheriff on the day of sale, and immediately after the sale of the property, with a notice that the plaintiff, Molyneux, would claim the money, raised on the sale of the mortgaged premises, but failed to give notice before the sale, and pending the sale, that the lien on the mortgage premises would be abandoned, and the corpus sold, and that the purchaser would purchase the whole title, the money being alone raised from the sale of the mortgaged premises, the same being sold to satisfy judgments at Law, to-wit, The Insurance Bank of Columbus, et al. *vs.* James S. Calhoun, et al. In deciding this question, it only becomes necessary to consider and determine, whether the lien of the mortgage was extinguished, and fully discharged, by the sale under the executions at common Law, and that the purchaser acquired a title to the corpus, as well as the equity of redemption. If he did so, and the lien of the mortgage was discharged; then the mortgage execution ought to be entitled to have and receive the proceeds of the sale. But if in the discretion, and at the option of the mortgagee, the *corpus* was still liable to be sold to satisfy the mortgage *lien;* then he ought to be permitted to claim the same.

Y

[Howard & al. vs. Jones & al.]

It certainly ought not to lie in the power and at the option of a mortgage creditor, to stand by with his mortgage execution in his pocket, and permit the mortgaged property to be sold by executions at law, and if he purchase, to determine that the corpus was sold, but if he is not the purchaser, or the same sold for a trifling sum, that only the mortgagor's title, as is generally termed the equity of redemption, was sold, and that the corpus is still subject to be sold to satisfy his demand. The Law never was intended to operate so unjustly. It would be unequal, iniquitous, and oppressive. The rule should be general, therefore, that purchasers may be induced to attend the sales, and that property may bring the best and highest price in market. But if it is at the discretion and will of the mortgagee, bidders or purchasers would not know when to attend the market, the kind of title to be sold, or what they were about to purchase. The mortgagor, by his mortgage deed, gave to the mortgagee a preference over all his creditors, save and except the then judgment creditors, with the reservation, or right to relieve the property from this preference or lien, at any time before the sale of the property. And the time and manner of sale is prescribed by the Law. The enjoyment of the property, as well as the right to redeem from the lien thus given until sold, still remains in the mortgagor; and this right or title, called here the equity of redemption, is subject to the demand and lien of judgment creditors at Law, and is subject to be seized and sold as other property, and which can be alienated by the mortgagor himself, and the purchaser only acquires such a title as was in the mortgagor, at the time of sale.—Could James S. Calhoun, on the day of sale, have sold any other right and title, than here prescribed? And could his judgment creditors, at Law, have conveyed, by the officers of the Law, more than he could have conveyed himself? The Law only sells such a title, as the defendant could have sold himself. The Sheriff, therefore, in this case only sold such a title, as remained in the defendant, Calhoun, which alone was subject to the demand of his general judgment creditors at Law, and that only. Upon this the mortgage creditor, Edward Molyneux, jr. had no lien, claim, or demand, no more than any other creditor, whose demand was not in judgment, at the time of sale. Molyneux, it is true, had by a judgment of the Court, a right to sell this property, but until this right was exercised, the title before described belonged and was subject alone to general judgment creditors. The Statute of

[Howard & al. *vs.* Jones & al.]

our State materially changes the common Law, in relation to the rights and titles of mortgagors, as well as mortgagees. By the common Law, on the decree of foreclosure, the right of the mortgagor to redeem, was lost and extinguished. By our Statute, a judgment of foreclosure is only an authority to seize and sell, given to the mortgagee, but the right to redeem exists in the mortgagor, until the moment, that the property is sold by the Sheriff; and that right was only sold by the Sheriff in this case. The *thing* being still liable to be sold, to satisfy the mortgagee's demand. And as the mortgagee's fi. fa. could only sell the *thing*, the *corpus*, it could only claim money arising therefrom. I am aware, from the decisions reported in this State, as well as from the opinions of sound lawyers submitted, that this is a vexed and unsettled question. That even in the same circuit, it has been determined each way—as by Judge Law, in the case of Jewett, et al. *vs.* McGowen, (see *Charlton R.*) that the equity of redemption alone was sold. And in the case of Maxwell *vs.* the Sheriff, Judge Henry decided otherwise, on the ground that the mortgage was foreclosed before the levy. Judge Law, in his letter to counsel, which has been read as argument in this case, says that there is evident distinction, between personal and real estate, and that the decision in the case of Jewett, et al. would apply with more propriety to real estate. For myself, I can see no distinction. The right to redeem in the mortgagor, until the thing is sold, is the same in each. Judge Hillyer has decided that, after foreclosure, a sale by a general judgment, sells the corpus; and I am advised that such has been the decision of the Northern and Western Circuits. The decisions in the Flint Circuit have been various. Some having gone so far, as I am advised by counsel, that the mortgagee has been decreed the money, even before foreclosure. Judge Cone decided, in Wilkinson Superior Court, that nothing but the equity of redemption could be sold; and it does seem to me that is the only safe and correct conclusion.

Edward Molyneux, jr. the mortgagee, still has a right to proceed against the property sold, and that right could not be in any wise defeated or prevented, by any rule of Law to the Court known. If he can so proceed, it is manifest he has no right to the money thus raised.

[Howard & al, *vs.* Jones & al.]

Therefore, let the money raised be applied to the payment of the general judgment creditors, according to their dignity.

FOSTER, HOWARD & PIERCE, M. J. WELLBORN, and HOLT & ALEXANDER, Solicitors for Complainants, and Attorneys for Edward Molyneux, jr.

JONES & BENNING, IVERSON, FORSYTH & MEIGS, THOMAS & DOWNING, Solicitors for Defendants, and Attorneys for general judgment creditors.